IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CASSANDRA YATES, | |
| Plaintiff, | **8:23CV5** |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | **MEMORANDUM & ORDER** |
| Defendant. | |

This is an action for judicial review for a final decision of the Commissioner of the Social Security Administration ("the Commissioner"). Filing No. 1. The claimant, Cassandra Yates, appeals the Commissioner's decision to deny her application for Social Security benefits under the Social Security Disability program and seeks review pursuant to 42 U.S.C. § 405(g) ("SSDI"). *See* Filing No. 10, Plaintiff's Motion for an Order Reversing the Commissioner's Decision; and Filing No. 13, Defendant's Motion to Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g). A transcript of the hearing held on November 8, 2021, is found in the record at Filing No. 5-2 at 34. This Court has jurisdiction under 5 U.S.C. §§ 702 and 706 to review the final decision.

**BACKGROUND**

I.   **Procedural History**

Ms. Yates filed an application for disability benefits under the SSDI program on September 8, 2020, alleging onset disability on March 19, 2020. Filing No. 5-2 at 12. Ms. Yates alleged that lupus and other impairments prevented her from performing substantial gainful activity. Filing No. 6-1 at 6. Her application was denied by the Commissioner on January 7, 2021, and a hearing was granted on November 8, 2021, where she testified to her disabling limitations. Filing No. 5-2 at 36. The Administrative Law Judge ("ALJ")

found that Ms. Yates was not disabled and denied benefits on November 30, 2021. *Id.* at 2. The Appeals Council denied review on November 4, 2022, making the November 30, 2021, decision by the ALJ, final. *Id.* Ms. Yates seeks review of the final decision.

## II.   Testimony from ALJ Hearing

Ms. Yates is a 48-year-old woman who holds a master's degree. Filing No. 5-2 at 42. Her prior work experience leading up to her alleged disability onset date includes work as an event coordinator from September 2004 to December 2014, a graduate student coordinator from December 2012 to December 2014, and an event manager from December 2014 to March 2020. Filing No. 6-3 at 44. Ms. Yates's alleges disability starting on March 19, 2020, due to systemic lupus erythematosus ("SLE"), inflammatory arthritis, and asthma. Filing No. 5-2 at 15. Her legal representation at the hearing, Attorney Kimberly Schram, explained that Ms. Yates's condition has deteriorated over years of gainful employment due to joint pain from arthritis and fatigue caused by autoimmune disease. *Id.* at 39. Ms. Yates's pain and fatigue increased to the point of having trouble working full time. *Id.* As of March 19, 2020, Ms. Yates has not worked full time. Filing No. 6-3 at 11. To supplement her household income, she began driving for Lyft a couple of hours a day between December 2020 and April 2021. Filing No. 5-2 at 40, *see also* Filing No. 6-2 at 11–23. However, due to her body becoming stiff and fatigued, she could only drive continuously for about 45 minutes before needing a break. Filing No. 5-2 at 48. She also testified that she could only drive for a couple of hours per day before needing to return home to lie down. *Id.*

Ms. Yates testified that she still does housework, including cooking and cleaning. Filing No. 5-2 at 51. She further testified that her pace of housework has slowed because

of joint pain and fatigue. *Id.* Household chores, such as doing the dishes and cleaning the bathroom and living room, cannot be completed in one day. *Id.* Ms. Yates occasionally goes out in public and takes short walks, but often requires use of a cane for assistance. *Id.* at 50. She testified that even rest can be exhausting, and that she can only lie down for up to a few hours before her hip, back, and legs start to hurt from being in a straight position. *Id.* at 49.

Ms. Yates summarized her medical care to the ALJ, noting frequent visits with Carolyn Coyle, MD, rheumatologist, and the treatment history of her arthritis and SLE. Filing No. 5-2 at 38. Dr. Coyle's medical opinion asserts, in part, that Ms. Yates would face limiting issues performing full-time work since she would need to be able to shift positions at will for 5 minutes at 45-minute intervals and would need extra, unstructured, breaks throughout the day to relieve her symptoms. *Id.* at 39.

A vocational expert ("VE") was present at the hearing and offered Dictionary of Occupational Titles ("DOT") classifications of Ms. Yates's past relevant work experience. Filing No. 5-2 at 41. The VE classified Ms. Yates's past relevant work experience as a "convention manager" and "secretary." *Id.* The ALJ then asked Ms. Yates a series of hypothetical occupational questions. *Id.* at 53. When asked if she would be able to perform the task of a delivery driver, she testified that she would have difficulty frequently getting in and out of a car. *Id.* When asked if she would be able to work in a call center, Ms. Yates testified that she would have difficulty staying seated for long periods of time and only being able to take typical, allotted, breaks due to aching joints and fatigue. *Id.* at 55.

3

The ALJ then asked the VE if Ms. Yates would have the ability to perform her past work as a secretary. Filing No. 5-2 at 56. The VE answered in the affirmative. Id. The VE also offered three alternative occupations at the sedentary exertional level: a lens inserter, a wire wrapper, and a semiconductor bonder. Id. at 57. Attorney Schram asked the VE if any of those positions would still be available if an individual needed to shift positions every 45 minutes for 5 minutes at a time. Id. The VE testified that if those breaks involved walking away from one's workstation, there would be no work positions available. Id. Attorney Schram then asked the VE if an individual would be able to maintain competitive work if she would have to take extra breaks outside of those allotted by the employer. Id. at 58. The VE answered in the negative. Id.

### III.   Medical Evidence

Ms. Yates's primary care physician, Brittany Hance, D.O., cared for her in the years leading up to the March 19, 2020, alleged disability onset. Dr. Hance's records noted that Ms. Yates complained of joint pain and swelling, fatigue, and alopecia. Filing No. 6-4 at 232. Dr. Hance ordered labs which showed a positive ANA panel. Id. at 15. Dr. Hance referred Ms. Yates to rheumatology for further treatment of her joint pain and fatigue. Id. Ms. Yates also saw James Friedlander, M.D., for her persistent allergies and asthma. Id. at 126–28.

#### 1.   Rheumatology Examinations

Ms. Yates was examined by Dr. Coyle on March 30, 2020, for a rheumatology appointment regarding her symptoms of progressively worsening fatigue and arthritis. Filing No. 6-4 at 145. Upon initial examination, Dr. Coyle noted that Ms. Yates "appears somewhat chronically ill" and the presence of alopecia and visible lesions. Id. at 147. Dr.

4

Coyle's initial impression was that Ms. Yates presented features of a potential lupus diagnosis and ordered x-rays and labs. *Id.* at 148. Ms. Yates was prescribed prednisone, hydroxychloroquine, and Plaquenil, and advised the continued use of Lyrica and meloxicam. *Id.*

Ms. Yates saw Dr. Coyle for a follow up visit on June 1, 2020. Filing No. 6-4 at 155. Dr. Coyle noted a generally improved condition as a result of the medications, but also noted persistent joint pain. *Id.* Dr. Coyle diagnosed Ms. Yates with SLE, leukopenia, osteoporosis, other headache syndrome, and hypermobility syndrome. *Id.* at 158. Dr. Coyle prescribed continued use of Plaquenil, prednisone, and meloxicam. *Id.* She also ordered a brain MRI that was performed on July 31, 2020. *Id.* at 179.

Ms. Yates saw Dr. Coyle for another follow up visit on September 1, 2020, where Ms. Yates complained of persistent joint pain and swelling. Filing No. 6-4 at 163. She continued to have headaches, mental fog, and increased fatigue. *Id.* An echocardiogram was ordered in preparation for further treatment options. *Id.* at 178. On September 9, 2020, Ms. Yates applied for disability. Filing No. 6-2 at 5. On October 26, 2020, Ms. Yates completed her disability report, and reported the following limiting conditions: SLE, leukopenia, hypermobility, and inflammatory polyarthropathy. Filing No. 6-3 at 14. On November 9, 2020, a third-party function report was completed by Ms. Yates's husband. *Id.* at 59.

Ms. Yates returned to rheumatology to see Dr. Coyle on December 2, 2020. Filing No. 6-4 at 257. She reported continuing joint pain, swelling, headaches, mental fog, and fatigue. *Id.* Dr. Coyle noted that Ms. Yates had lost 30 pounds since the onset of SLE. *Id.* at 260. Dr. Coyle ordered labs to determine the direction of future treatment, and

prescribed a temporary prednisone increase and a change from meloxicam to celecoxib. *Id.* at 261.

On March 2, 2021, Ms. Yates returned to Dr. Coyle and reported poor energy, myalgias, arthritis and leukopenia. Filing No. 6-4 at 291. Ms. Yates had been taking Benlysta. *Id.* Dr. Coyle prescribed the continued use of Benlysta. *Id.* at 292.

On July 6, 2021, Ms. Yates saw Dr. Coyle and reported a recent shingles flair up and her tapered use of Benlysta. Filing No. 6-4 at 312. Dr. Coyle noted continued migraine issues and background Raynaud's. *Id.* Ms. Yates stated that her pain was 7 or 8 out of 10 and that her fatigue was 8 or 9 out of 10. *Id.* Dr. Coyle performed an exam and found that she had left inguinal lymphadenopathy with trace warmth 2+ swelling and 10 tender joints, including shoulders, elbows, wrists, knees, and ankles. *Id.* at 315. Dr. Coyle prescribed the continued use of Benlysta and directed that Dupixent could be continued for asthma. *Id.* at 316. Dr. Coyle prescribed amlodipine for headaches and suggested that a neurology referral should be considered. *Id.*

Ms. Yates's final rheumatological appointment before the ALJ hearing occurred on October 6, 2021. Filing No. 6-4 at 325. Ms. Yates reported that her pain was 6 or 7 out of 10 and that her fatigue was 8 out of 10. *Id.* Dr. Coyle noted a continuance of myalgia and tenderness in her joints including in her shoulders, elbows, wrists, knees, and ankles. *Id.* at 328. Dr. Coyle prescribed duloxetine and continued prednisone, hydroxychloroquine, amlodipine, and Benlysta. *Id.* at 329.

Over the course of the 18 months between March of 2020 and October of 2021, on seven occasions, Ms. Yates saw Dr. Coyle for rheumatological examinations and treatment. Filing No. 6-4. On October 29, 2021, Dr. Coyle provided opinions concerning

6

Ms. Yates's lupus-related limitations.  Filing No. 6-4 at 331.  She reported that Ms. Yates saw her every three months.  *Id.*  Dr. Coyle reported that Ms. Yates symptoms included severe fatigue, involuntary weight loss, malaise, alopecia, rash, headache, joint pain, and swelling.  *Id.*  She also reported the presence of leukopenia, anxiety, fluctuating cognition, inflammatory arthritis, and skin issues.  *Id.* at 332.  Dr. Coyle stated that Ms. Yates's condition was expected to last her lifetime and that her pain prevented her from performing an easy job for 8 hours a day, 5 days per week.  *Id.*  Noting that during the workday, Ms. Yates would need to often shift positions, take several unstructured breaks at will, and require periods of walking around.  *Id.* at 333.

## IV.    The ALJ's Findings

Ultimately, the ALJ found Ms. Yates as not disabled.  Filing No. 5-2 at 13.  The ALJ used the five-step sequential evaluation process (20 C.F.R. § 404.1520(a)) in determining whether the status of disability.  Filing No. 5-2 at 13–14.  The ALJ determined that Ms. Yates met the insured status requirements of the Social Security Act.  *Id.* at 14.  At Step One, the ALJ found that Ms. Yates had not engaged in substantial gainful activity since the alleged onset date of March 19, 2020.  *Id.*

At Step Two, the ALJ concurred that Ms. Yates suffered from SLE, inflammatory arthritis, and asthma, and classified those ailments as severe impairments.  Filing No. 5-2 at 15.  The ALJ contended that Ms. Yates's depression and anxiety "do not cause more than minimal limitation" in her ability to perform basic mental work, and are therefore, non-severe, citing 20 C.F.R. § 404.1520a(d)(1) in support.  *Id.*  The ALJ acknowledged Dr. Coyle's report of Ms. Yates's fluctuating cognition due to lupus fog but challenged the

consistency of the claim because Ms. Yates did not report mental health symptoms at the hearing.  *Id.*

At Step Three, the ALJ found that Ms. Yates's impairments did not meet, or medically equal, the criteria of an impairment as listed in 20 C.F.R. § 404.1520, which include a combination of affected body systems and symptoms attributable to SLE, or limitations of daily, social, and task oriented functioning attributable to SLE.  Filing No. 5-2 at 16.  The ALJ justified this finding, stating that Ms. Yates's immune system disorders are not associated with fatigue, fever, malaise, or involuntary weight loss.  *Id.*  The ALJ also noted that Ms. Yates's respiratory impairments are not demonstrated by the required frequency of severe asthma attacks or other disorders of applicable listing-level impairments.  *Id.*

At Step Four, the ALJ determined that Ms. Yates has the residual functional capacity ("RFC") to perform sedentary work.  Filing No. 5-2 at 17.  The ALJ noted that this determination was made by considering all of Ms. Yates's symptoms to the extent that those symptoms can reasonably be accepted as consistent with the objective medical evidence.  *Id.*  The ALJ remarked that Ms. Yates testified she had no problems caring for herself, performing household chores, or attending church.  *Id.* at 18.  The ALJ admitted that Ms. Yates's medically determinable impairments could be expected to cause her alleged symptoms, but contended that the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence.  *Id.*  Additionally, the ALJ highlighted Ms. Yates's claim that her condition had improved with medical treatment, therapy, and medication, and that by July 2020, had stabilized.  *Id.* at 18–19.  The ALJ also made brief note of Ms. Yates's subsequent deteriorating condition and rheumatology

treatment, including Dr. Coyle's notes and diagnosis of Ms. Yates's lupus, joint pain, and fatigue. *Id.* at 19–20.

The ALJ addressed Dr. Coyle's lupus medical opinion which showed Ms. Yates had symptoms of severe fatigue, involuntary weight loss, and malaise, and, as a result, could not work an eight-hour workday due to pain and need for frequent, unallotted, breaks. Filing No. 5-2 at 20. The ALJ opined that Dr. Coyle's medical opinion contained minimal objective medical evidence to support Ms. Yates's complaints, and again noted that in 2020, Ms. Yates's condition seemed to have improved with medication and treatment. *Id.* The ALJ referenced other statements by Ms. Yates at the hearing including her use of a keyboard at some point before the hearing, which contradicted her claim that that she would struggle to use a keyboard for long periods of time. *Id.* at 21. The ALJ referenced statements made by Mr. Yates, Ms. Yates's husband, including that Ms. Yates struggled to sleep because of joint pain, suffered from constant fatigue, and struggled to stand, reach, lift, or bend, claiming that these statements lacked material support from other evidence in the record. *Id.* The ALJ generally found Ms. Yates's stated symptoms and limitations as unsupported and conflicting with medical evidence. *Id.*

The ALJ noted that his assessment of Ms. Yates's RFC considered the treating physician's opinion, but because Ms. Yates's claim was filed after March 27, 2017, the opinion and assessment by Dr. Coyle is governed by the rules in 20 C.F.R. § 404.1520c, and therefore could not be given any specific evidentiary weight. Filing No. 5-2 at 21. The ALJ found Dr. Coyle's opinion was generally inconsistent because it mentioned that Ms. Yates had need for a cane, but also noted that Ms. Yates had a "normal gait" and did not mention cane use at three of her medical appointments. *Id.* at 22. The ALJ noted

that Dr. Coyle found Ms. Yates had fluctuating cognition due to lupus fog but asserts that Dr. Coyle never indicated that she had observed that symptom in the past. *Id.* Further, the ALJ found that Dr. Coyle's opinion "that Ms. Yates could not work a full-time job" lacked support and asserts that Dr. Coyle "has no way of knowing if the claimant could do that or not." *Id.* The ALJ found that the original medical records at the initial and reconsideration levels to be persuasive because they are "acceptable medical sources," but generally found Dr. Coyle's records and opinion to be unpersuasive. *Id.*

The ALJ also considered the opinion of the State agency medical physical consultant, who was of the opinion that Ms. Yates could perform light work with some non-exertional limitations. Filing No. 5-2 at 22. The State agency medical psychological consultant determined that Ms. Yates would have no limitations in all functional areas. *Id.* at 23. In sum, the ALJ determined that the RFC assessment is supported by the record, and that the claim that Ms. Yates is unable to engage in any kind of full-time, competitive, and gainful employment on a sustained basis is not persuasive. *Id.*

At Step Five, the ALJ found that Ms. Yates is capable of performing past relevant work as a secretary because that work does not require the performance of work-related activities precluded by her RFC. Filing No. 5-2 at 23. The ALJ found Ms. Yates able to perform the job as a secretary as actually performed. *Id.* Noting that the VE, in consideration of Ms. Yates's limiting factors, determined that she would be able to perform the requirements of alternative occupations such as lens inserter, wire wrapper, or semiconductor bonder. *Id.* at 24.

Having completed Steps 1 through 5, the ALJ found that Ms. Yates was not disabled as defined by the Social Security Act. Filing No. 5-2 at 24–25.

10

**STANDARD OF REVIEW**

When reviewing a determination for Social Security Disability benefits, the district court does not act as a factfinder or substitute its judgment for the judgment of the ALJ or the Commissioner.  See *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995) (citing *Loving v. Dep't of Health & Hum. Servs., Sec'y*, 16 F.3d 967, 969 (8th Cir. 1994)).  The court's review is limited to an inquiry into whether there is substantial evidence on the record to support the findings of the ALJ and whether the ALJ applied the correct legal standards. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011); *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000).  Substantial evidence equates to something less than a preponderance of the evidence, but more than a mere scintilla; such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003)); *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

However, this "review is more than a search of the record for evidence supporting the [Commissioner's] findings," and "requires a scrutinizing analysis." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 821 (8th Cir. 2008) (quoting *Hunt v. Massanari*, 250 F.3d 622, 623 (8th Cir. 2001); *Cooper v. Sec'y of Health & Hum. Servs.*, 919 F.2d 1317, 1320 (8th Cir. 1990)).  In determining whether there is substantial evidence to support the Commissioner's decision, the court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).

**DISCUSSION**

11

### 1.  Sequential Analysis

The Social Security Administration has promulgated a sequential process to determine whether a claimant qualifies for disability benefits.   *See* 20 C.F.R. § 404.1520(a)(4).   The determination involves a step-by-step analysis of the claimant's current work activity, the severity of the claimant's impairments, the claimant's RFC, his or her age, education, and work experience.  *Id.*  At Step One, the claimant has the burden to establish that he or she has not engaged in substantial gainful activity since his or her alleged disability onset date.  *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998).  At Step Two, the claimant has the burden to prove he or she has a severe, medically determinable, physical or mental impairment, or combination of impairments that significantly limits his or her physical or mental ability to perform basic work activities.  *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013).

At Step Three, "[i]f the claimant suffers from an impairment that is listed in [20 C.F.R. § 404.1520(a)] the Listings or is equal to such a listed impairment, the claimant will be determined disabled without considering age, education, or work experience." *Flanery v. Chater*, 112 F.3d 346, 349 (8th Cir. 1997); *see also Braswell v. Heckler*, 733 F.2d 531, 533 (8th Cir. 1984).  "The Listings" stipulate the criteria for each impairment that is considered presumptively disabling.  20 C.F.R Part 404, Subpart P, App. 1 § 11.03. If the claimant does not meet the listing requirements, the ALJ will instead determine the RFC, which the ALJ uses at Steps Four and Five.  20 C.F.R. § 404.1520(a)(4).

A claimant's RFC is what he or she can do despite the limitations caused by any mental or physical impairments. *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014); 20 C.F.R. § 404.1545(a).  The ALJ is required to determine a claimant's RFC based on all

relevant evidence, including medical history, opinions of treating physicians and specialty physicians, and the claimant's own descriptions of his or her limitations. *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015). "The RFC must (1) give appropriate consideration to all of [the claimant's] impairments, and (2) be based on competent medical evidence establishing the physical and mental activity that the claimant can perform in a work setting." *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016) (quoting *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011)).

At Step Four, the claimant has the burden to prove he or she lacks the RFC to perform his or her past relevant work. *Cuthrell*, 702 F.3d at 1116. If the claimant can still do his or her past relevant work, he or she will be found not disabled; otherwise, at Step Five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy that the claimant can perform. *See Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (citing *Reed v. Sullivan*, 988 F.2d 812, 815–16 (8th Cir. 1993)).

### 2. Treating Physician

"The ALJ must give 'controlling weight' to a treating physician's opinion if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Papesh*, 786 F.3d at 1132 (quoting *Wagner v. Astrue*, 499 F.3d 842, 49 (8th Cir. 2007). Even if not entitled to controlling weight, a treating physician's opinion "should not ordinarily be disregarded and is entitled to substantial weight." *Papesh*, 786 F.3d at 1132 (quoting *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007). The regulatory framework requires the ALJ to evaluate a testing source's opinion in consideration of factors such as length of treatment, frequency of

13

examination, nature and extent of the treatment relationship, support of opinion afforded by medical evidence, consistency of opinion with the record as a whole, and specialization of the treating source. *See* 20 C.F.R. § 404.1527(c)(2). "When an ALJ discounts a treating physician's opinion, the ALJ should give 'good reasons' for doing so." *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (quoting *Dolph v. Barnhart*, 308 F.3d 876, 878 (8th Cir. 2002)).

Recently, the Social Security Administration amended and reorganized the regulations and 20 C.F.R. §§ 404.1527 and 416.927 have been superseded by 20 C.F.R. §§ 404.1520c and 416.920c for claims filed after March 27, 2017. *See Seay v. Berryhill*, No. 5:16-CV-05096-VLD, 2018 WL 1513683, at *39 (D.S.D. Mar. 27, 2018). According to Social Security Administration rules effective March 27, 2017, the ALJ need not grant any medical opinion controlling weight, regardless of whether the opinion comes from a treating, examining, or consulting physician. 20 C.F.R. § 404.1520c. Instead, the ALJ must evaluate medical opinions according to 5 factors: (1) Supportability, (2) Consistency, (3) Relationship to the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization, and (5) other factors. *Id.* According to the rule, supportability and consistency are the most important factors and must be addressed by the ALJ in his or her decision. *Id.* Thus, while the new rules do not dictate the weight the ALJ is to ascribe to any given medical opinion, the ALJ is required to explain why she finds a medical opinion to be persuasive or not. *Dornbach v. Saul*, No. 4:20-CV-36 RLW, 2021 WL 1123573, at *3 (E.D. Mo. Mar. 24, 2021). Therefore, the old standard that "when an ALJ discounts a treating [source's] opinion, she

14

should give good reasons for doing so," still applies. *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).[1]

In this case, the ALJ asserts that he cannot give specific weight to any medical opinions, but instead must consider an opinion's supportability and consistency. Filing No. 5-2 at 22.  The Court notes that the ALJ *can* give weight to a medical opinion and *should* consider the medical relationship between the claimant and the treating physician, as well as the treating physician's specialty.  In this case, the ALJ offers two reasons why Dr. Coyle's medical opinion is generally unpersuasive: Dr. Coyle's opinion is inconsistent and lacks supporting evidence.  *Id.*

 First, the ALJ contends that Dr. Coyle's opinion states that Ms. Yates suffered from lupus fog, but no such observation had been made in past medical evaluations by Dr. Coyle.  Filing No. 5-2 at 37.  The ALJ relies on this alleged discrepancy to suggest that Dr. Coyle lacks consistency in her lupus medical opinion and medical history records. However, the ALJ's assertion is incorrect.  Dr. Coyle specifically made note of mental fog in several examination reports.  *See* Filing No. 6-4 at 163, 332, and 257.

Second, the ALJ contends that Dr. Coyle is of the medical opinion that Ms. Yates needs use of a cane to ambulate, but Dr. Coyle's medical record listed Ms. Yates as having a "normal gait" during her July 2021 rheumatology appointment.  Filling No. 5-2 at 37.  The Court finds that the alleged inconsistency is simply one of context.  Ms. Yates may be observed as having a normal gait in the controlled environment of a doctor's office, while concurrently needing use of a cane for prolonged periods of ambulation.  The

---

[1] This Court reserves judgment on how the new rules interact with long held case law precedent outlining the substantial weight due to the medical opinions of treating physicians, as the result would be the same in this case no matter which rules apply.  *See Papesh*, 786 F.3d at 1133.

lack of supporting reasons in the ALJ's decision leads the Court to find that the ALJ erred in drawing its conclusion that Dr. Coyle's opinion is unsupported and inconsistent.

The Court further contends that while the ALJ should consider a treating physician's specialty, the ALJ appears to have inappropriately disregarded Dr. Coyle's specialization and experience.  When Dr. Coyle concluded that Ms. Yates could not work a full-time job, the ALJ opined that Dr. Coyle "has no way of knowing if the claimant could do that or not."  Filing No. 5-2 at 37.  Such a standard could be said for any medical expert, including the vocational expert.  The Court finds that Dr. Coyle's opinion has a rational and objective basis and therefore finds it credible.  Additionally, the Court recognizes Dr. Coyle's specialty in rheumatology is sufficient in determining the symptoms and limitations of her patient, Ms. Yates, as it pertains to lupus, and dismisses the ALJ's conclusion concerning Dr. Coyle's opinions and knowledge.

In addition to consistency, supportability, and specialty, the ALJ should have considered the medical relationship between the treating physician and the claimant.  Dr. Coyle began treating Ms. Yates soon after her positive ANA panel and continued over the next 18 months leading up to Ms. Yates's application for disability benefits.  Filing No. 6-4 at 245.  Dr. Coyle saw Ms. Yates every three months, closely monitored her condition, and frequently adjusted her treatment plan.  Despite Dr. Coyle's intimate familiarity with Ms. Yates's condition and progress, the ALJ discounted any opinion given by Dr. Coyle in the disability determination.  The Court finds that the ALJ erred in failing to consider the medical relationship between Dr. Coyle and Ms. Yates and the resulting opinions and recommendations.

### 3.  Credibility

16

In determining whether to fully credit a claimant's subjective complaints of disabling pain, the ALJ engages in a two-step process: (1) the ALJ considers if there is an underlying impairment that could reasonably produce the claimant's symptoms; and (2) if so, the ALJ evaluates the claimant's description of "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit" the claimant's ability to work.  Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01.  In the second step of the analysis, in recognition of the fact that "some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent that other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence[,]" an ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." 81 FR at 14168.

To determine the intensity and persistence of an individual's symptoms, the ALJ evaluates objective medical evidence, but "will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled." *Id.*  However, the ALJ must "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." 81 FR 14169.  If an ALJ cannot make a disability determination or decision that is fully favorable based solely on objective, then he or she must carefully consider other evidence in the record—

including "statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms, including agency personnel, as well as the factors[2] set forth in [the Social Security] regulations" – in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms.  *Id.*

Social Security Ruling 16-3p also provides:

> We will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluation whether symptom intensity and persistence affect that ability to perform work-related activities for an adult or the ability to function independently, appropriately, and effectively . . ..  Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.

81 FR 14170.  "[The Eighth Circuit Court of Appeals] has repeatedly stated that a person's ability to engage in personal activities such as cooking, cleaning, or a hobby does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity."  *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (citing *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998)).  Subjective allegations of disabling pain can be discredited if the claimant has only occasionally followed medical treatment or taken prescribed medications.  *Singh*, 222 F.3d at 453; *see Gulliams v. Barnhart*, 393

---

[2] Those factors include:

> 1) Daily activities; 2) The location, duration, frequency, and intensity of pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) Any other factors concerning an individual's function limitations and restrictions due to pain or other symptoms.

81 FR at 14169–70

F.3d 798, 801 (8th Cir. 2005) ("A claimant's subjective complaints may be discounted if there are inconsistencies in the record as a whole.").

The ALJ addressed Ms. Yates's subjective claims pertaining to her accounts of pain and limitations because of her ailments. Filing No. 5-2 at 17–22. The ALJ contends that Ms. Yates's claims are not supported by objective medical evidence. *Id.* at 20. He admits that Ms. Yates's symptoms are genuine but have also responded well to medical treatment. *Id.* The ALJ notes that Ms. Yates participates in household chores and hobbies and that the participation in these activities is not limited to the extent one would expect of one suffering from the disabling symptoms and limitations that Ms. Yates alleges. *Id.* The Court reminds the ALJ that participation in chores and hobbies do not constitute evidence of the ability to participate in substantial gainful activity. *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (citing *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998)).

In the disability determination by the ALJ, Ms. Yates's purported ailments are listed and generally followed by the ALJ's assertions that those complaints are inconsistent with the medical record. Filing No. 5-2 at 17–20. The ALJ mentions Ms. Yates's alleged inability to drive due to dizziness, difficulty walking and standing, insomnia, joint pain, shoulder pain, arthritis, and limited mobility, and fatigue and exhaustion. *Id.* at 17. The ALJ asserts that Ms. Yates's claims are not consistent with the medical record and argues that her claims are not credible. *Id.* The Court finds the ALJ's conclusions are not supported by the record.

First, the ALJ stated that Ms. Yates complained that dizziness was a side effect from her medication which precluded her from driving. Filing No. 5-2 at 17. The ALJ then

reasoned that Ms. Yates had a part-time driving job, showing that she was generally able to drive and that her medical history does not specifically list dizziness as an ailment, which the ALJ used as evidence of inconsistency between her claims and the medical record. *Id.* at 20. The Court disagrees. Yes, Ms. Yates briefly worked as a part-time driver, however she was unable to sustain the job for an extended period of time because of her limitations. *See* Filing No. 5-2 at 48. Further, Ms. Yates explained that her dizziness was caused by some of her medication. *Id.* Ms. Yates's claim is supported in several places in the record listing her medications. Both Benlysta and Lyrica include dizziness as a known side effect. Filing No. 6-4 at 332. Valacyclovir and Plaquenil are also known to include dizziness as a side effect. Filing No. 6-3 at 79. The Court finds no inconsistency between the medical record and Ms. Yates's complaints of difficulty driving due to dizziness.

Second, the ALJ wrote that Ms. Yates complained of difficulty walking and standing for long periods of time, which he found to be inconsistent with the medical record. Filing No. 5-2 at 17. The ALJ supports this opinion by noting that the medical record includes reports of Ms. Yates's "normal gait." *Id.* at 19. However, the Court found that difficulty standing, walking, and climbing stairs are all listed ailments recorded in the medical record. Filing No. 6-4 at 228. Therefore, finding no inconsistency between the medical record and claims of struggles with walking and standing.

Third, the ALJ noted Ms. Yates's claims of severe limitations and pain due to arthritis and a shoulder injury. Filing No. 5-2 at 18–19. The ALJ contends that Ms. Yates's claims are not supported by the medical record. *Id.* However, the medical record objectively states that Ms. Yates exhibits acute and progressive joint pain and mobility

limitations. Filing No. 6-4 at 23. The medical record also indicates joint arthritis related pain. *Id.* at 31. The medical record objectively states that Ms. Yates's shoulder pain progressed to the point of a possible orthopedics referral for further assessment. *Id.* at 35. The medical record also states that Ms. Yates suffers from tender shoulders, elbows, wrists, knees, and ankles. *Id.* at 166. While Ms. Yates has had fluctuating pain and limitations due to her arthritis, joint pain, and shoulder injuries over the years, the Court finds that Ms. Yates claims are adequately supported by the vast majority of her medical record. The Court finds that ALJ erred in drawing its conclusion of inconsistency in this regard.

Fourth, the ALJ found that Ms. Yates complaints of fatigue and exhaustion were generally unsupported by the medical record. Filing No. 5-2 at 17–18. However, the Court has found numerous places in the medical record that supports an objective medical assessment of fatigue, including in her March 2020 visit with Dr. Hance when Ms. Yates's ANA panel first indicated a possible lupus diagnosis. Filing No. 6-4 at 14. The Court finds that Ms. Yates's claims of fatigue and exhaustion are adequately supported and consistent with the medical record.

Finally, the ALJ found that Ms. Yates complaints of asthma were unsupported by the medical record. Filing No. 5-2 at 19. However, the medical record shows that Ms. Yates has struggled with asthma for years and lists her ailment as chronic. Filing No. 6-4 at 127. While Ms. Yates is recorded as having her asthma under control with the use of medication, the Court finds that her subjective complaints regarding her limitations with asthma are adequately supported by the record.

The Court finds that the medical record supports Ms. Yates's complaints.  Because Ms. Yates's claims are not inconsistent with her medical records, the Court finds that the ALJ erred in failing to adequately consider Ms. Yates's credibility in accounting for the severity of her ailments.

### 4. VE's Testimony

In the fourth step of the sequential analysis, the ALJ is to consider whether a claimant's impairments keep her from doing past relevant work.  20 C.F.R. § 404.1520(e). A claimant's RFC is the most that one can do despite his or her limitations.  20 C.F.R. § 404.1545(a)(1).  The claimant is not disabled if the claimant retains the RFC to perform: "1.  The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupations as generally required by employers throughout the national economy."  *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996) (quoting Soc. Sec. Ruling 82–61).  During this step, an ALJ may consider the VE's testimony when determining the claimant's RFC.  *Wagner*, 499 F.3d at 853–854.  The ALJ often asks the VE a hypothetical question to help determine whether a sufficient number of jobs exist in the national economy that can be performed by a person with a similar RFC to the claimant.  *Guilliams*, 393 F.3d at 804.

An ALJ has an affirmative duty to inquire as to "any possible conflict" between the DOT and its companion publication, the Selected Characteristics of Occupations ("SCO"). *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014).  An ALJ must resolve any apparent unresolved conflicts between the VE testimony and the DOT's characteristics of the jobs identified by the VE before relying on the VE testimony.  *See Thomas v. Berryhill*, 881 F.3d 672, 677–78 (8th Cir. 2018).

At the ALJ hearing, the ALJ began his Step Four determination by asking the VE to categorize Ms. Yates's past relevant work based on the DOT.  Filing No. 5-2 at 41. The VE classified Ms. Yates's past work experience, a graduate student coordinator, as a "secretary" under the DOT.  *Id*.  The VE also classified Ms. Yates's time as an event coordinator as a "convention manager" under the DOT.  *Id*.

The ALJ asked Ms. Yates hypothetical questions regarding her ability to perform various tasks.  Filing No. 5-2 at 54.  In responding to the ALJ's question if she could work as a delivery person for an auto parts store, Ms. Yates responded that it would be a difficult for her to do that job.  *Id*.  When asked if she could work at a call center, Ms. Yates stated that sitting and typing for prolonged periods of time would cause her too much joint pain and she would be unable to complete that job.  *Id*. at 55.

The ALJ presented the VE the following hypothetical scenario:

> I want you to assume a person who has past work in the two occupations that you identified for us earlier [Convention Manager and Secretary] and I want you to assume this person has the ability to perform light work as that term is defined in the DOT and in the regulations.  This person is able to stoop, kneel, crouch, and crawl occasionally, is able to reach overhead occasionally, is able to handle and finger frequently, and is able to perform work that does not require sustained exposure to concentrated extreme cold, vibration, fumes, or dust.  If a person is able to do those things, could that person perform either of the claimant's past due occupations?

Filing No. 5-2 at 56.  The VE responded in the affirmative.  *Id*.  The ALJ then asked if the hypothetical question changed from "inability to do light work" to "inability to perform sedentary work" could the person be able to perform the past work of a secretary.  *Id*. The VE answered in the affirmative.  *Id*.

The ALJ determined that Ms. Yates had the RFC to perform work as a secretary. Filing No. 5-2 at 23.  The ALJ's decision was made in part by relying on the VE's

testimony. *Id*. However, the VE failed to acknowledge the DOT conflict regarding the frequent reaching requirement listed in the secretary job description in the DOT. 201.362-030 Secretary, DICOT 201.362-030 (frequent reaching). Upon this discrepancy, the Court finds the conclusion drawn by the VE, and, by virtue, the ALJ, that Ms. Yates could work as a secretary, to be in error.

In Ms. Yates's RFC examination, it is recorded that she has an exertional limitation of frequently lifting up to 10 pounds and occasionally lifting up to 20 pounds. Filing No. 5-3 at 7. Ms. Yates was limited to sedentary exertional level work that involves lifting no more than 10 pounds at a time and does not allow for lifting up to 20 pounds per the Commissioner's regulations. 20 C.F.R. § 404.1567(a). The DOT position of a convention manager requires the lifting of up to 30 to 40 pounds and reaching frequently. 187.167-078 Manager, Convention, DICOT 187.167-078. The DOT position of a secretary requires frequent reaching and the lifting of up to 20 pounds. 201.362-030 Secretary, DICOT 201.362-030. Additionally, the ALJ erred in failing to consider Ms. Yates work-duration limitations of needing unstructured breaks at maximum 45-minute intervals. The VE testified that for such a limitation, no DOT jobs would be available. Filing No. 5-2 at 57–58. For these reasons, and the reasons stated above, the Court finds that the ALJ should have determined Ms. Yates's disability at Step Four, as she no longer exhibited the RFC to maintain employment of her past jobs or that of a similar DOT classified position.

The ALJ continued to Step Five and determined that based on Ms. Yates's age, education, and work experience, there are other jobs in the national economy that Ms.

Yates can perform given the ALJ's Step Four determination.[3]  The ALJ asked the VE if Ms. Yates could work any other occupations similar to that of a secretary, given Ms. Yates's limitations.  Filing No. 5-2 at 57.  The VE provided examples of occupations at the sedentary exertional level, including a lens inserter, a wire wrapper, and a semiconductor bonder.  *Id*.

### 5.  Resolving Conflicts between VE Testimony and DOT Classification(s)

When VE testimony conflicts with the DOT, the testimony does not constitute substantial evidence on which the ALJ may rely to show that other jobs exist in the economy in significant numbers the claimant can perform.  *Kemp ex rel. Kemp*, 743 F.3d at 632.  An ALJ must resolve any apparent conflicts between the VE's testimony and the DOT definition of an occupation before relying on the testimony in making a disability decision.  *See Thomas*, 881 F.3d at 677–78.  In this case, the ALJ found that Ms. Yates was limited to occasional overhead lifting.  Filing No. 5-2 at 17.  The ALJ determined that there *may be an issue* regarding the frequency of reaching required by occupations recommended in the VE testimony but asserted that the DOT does not define the actual direction of reaching required.  *Id*. at 24.  The ALJ relied on the VE's education and experience to conclude that the overhead reaching limitation contained in the RFC would not affect the listed occupations.  *Id*.  However, per the DOT, the secretary job requires frequent reaching.  201.362-030 Secretary, DICOT 201.362-030 (frequent reaching).  Given that the alternative jobs the VE offered were based on the same sedentary exertional limits of a secretary, the Court finds a discrepancy between the ALJ's RFC

---

[3] The Court notes that the sequential analysis should have concluded by the ALJ finding Ms. Yates to be disabled at Step Four.  Because the ALJ hearing continued on to a Step Five analysis the Court will comment further.

determination and the VE's testimony.  Therefore, the ALJ erred in relying on the VE's testimony to make a disability determination against Ms. Yates.

**CONCLUSION**

 "Where further hearings would merely delay a receipt of benefits, an order granting benefits is appropriate."  *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001) (quoting *Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir. 1984).  The weight of the evidence discussed above points to a conclusion that Ms. Yates has been disabled since March 19, 2020.  There is not substantial evidence to support the findings of the ALJ, and there is overwhelming evidence that Ms. Yates cannot perform any of the jobs listed by the VE.  Accordingly, the Court will grant Ms. Yates's motion to reverse the decision of the Commissioner.

**THEREFORE, IT IS ORDERED:**

1.  Plaintiff's motion to reverse (Filing No. 10) is granted;

2.  Defendant's unopposed motion to remand (Filing No. 13) is denied;

3.  The decision of the Commissioner is reversed;

4.  This action is remanded to the Social Security Administration for an award of benefits; and

5.  A judgment will be entered in conjunction with this Memorandum and Order

Dated this 25th day of August 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge